## APPEAL OF BERKSHIRE COTTON MANUFACTURING CO.

Docket No. 74.   Promulgated January 27, 1927.

1. The petitioner, a manufacturer of cotton goods, asserts that its net income is overstated as the result of the Commissioner's computations with respect to inventories. *Held*, that the evidence is insufficient to establish such contentions.

2. The Commissioner by answer asserted an additional deficiency. One of the grounds therefor is that the tax was erroneously computed. The petitioner filed a return for the period January 1 to September 30, 1918. The Commissioner computed the net income to be nine-twelfths of the net income for the fiscal year ending September 30, 1918, after having made inventory adjustments, *Held*, that the taxable net income for such period is the actual net income and not a proportionate part of the net income for the entire fiscal year. *Held, further*, that in all other respects the Commissioner has failed to establish the right to have the deficiency increased.

*Samuel Freedman, Esq.*, for the petitioner.
*S. D. Mitchell, Esq.*, for the Commissioner. *Lawrence J. Kelley*, of counsel.

This is an appeal from the determination of deficiencies in income and profits taxes for the calendar year 1917, the period of January 1 to September 30, 1918, the fiscal years ended September 30, 1919 and 1920, respectively, aggregating $707,759.81, and an overassessment for the calendar year 1916 amounting to $1,302.45. On motion duly granted by the Board, the Commissioner filed an amended answer to the petition in which he asserted an additional deficiency of $53,039.21. The petition set out five allegations of error, two of which were withdrawn by the petitioner at the hearing, while a third one was agreed upon by the parties, leaving only two issues to be considered and decided by this Board. They are as follows: (1) The overstatement by the Commissioner of the net income for each of the taxable years and period under consideration; and (2) whether the petitioner is entitled to special assessment under the provisions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918. The Commissioner's

amended answer, in which he asserts an additional deficiency of $53,039.21, raises an additional issue as to the amount of the net income for the period January 1 to September 30, 1918.

FINDINGS OF FACT.

The petitioner is a Massachusetts corporation with its principal office at Adams, where it is engaged as a spinner and weaver in the manufacture of cotton fabrics of a type known as grey cloth.  During all the years involved in this appeal it was affiliated with the Silver Creek Co., which is located at Clarksdale, Miss., where it is engaged in the business of operating cotton plantations.  The deficiencies asserted by the Commissioner are based upon consolidated returns of net income and invested capital, filed by the affiliated corporations for each of the years for which additional tax liability is asserted.

At the close of each of the taxable years and the period under consideration, the petitioner's inventory was made up of four items: (1) Finished grey cotton cloth; (2) goods in process; (3) raw cotton; and (4) coal, starch, and burlap.  The petitioner consistently valued its inventories on the basis of cost.  The net income reported in the returns for the years and period under consideration was computed by the use of inventories.

The Commissioner has recomputed the inventories for all of the years and the period involved, and has determined that the valuations thereof, on the basis of cost, are materially different from the valuations placed thereon by the petitioner as shown in its tax returns.  The inventory valuations of the petitioner and the Commissioner, for the several years and period involved in this appeal, are as follows:

|  | Petitioner's valuation. | Commissioner's valuation. | Difference. |
|---|---|---|---|
| **December 31, 1916.** |  |  |  |
| Work in process | $291,129.72 | $246,418.30 |  |
| Finished cloth | 52,394.61 | 54,350.21 |  |
| Raw cotton | 1,079,350.00 | 1,056,983.35 |  |
| Coal, starch, burlap | 10,603.00 | 10,603.00 |  |
| Total | 1,433,477.33 | 1,368,354.86 | [1] $65,122.47 |
| **September 30, 1917.** |  |  |  |
| Work in process | 270,435.73 | 305,344.13 |  |
| Finished cloth | 62,502.82 | 72,918.90 |  |
| Raw cotton | 490,590.00 | 488,106.41 |  |
| Coal, starch, burlap | 16,186.88 | 16,186.88 |  |
| Total | 839,715.43 | 882,556.32 | [2] 42,840.89 |
| **December 31, 1917.** |  |  |  |
| Work in process | 320,199.05 | 417,174.55 |  |
| Finished cloth | 65,869.91 | 100,172.47 |  |
| Raw cotton | 1,756,840.00 | 1,669,275.67 |  |
| Coal, starch, burlap | 18,229.20 | 18,229.20 |  |
| Total | 2,161,138.16 | 2,204,851.89 | [2] 43,713.73 |

[1] Decrease.                    [2] Increase.

| | Petitioner's valuation. | Commissioner's valuation. | Difference. |
|---|---|---|---|
| **September 30, 1918.** | | | |
| Work in process | $423, 289. 11 | $544, 051. 11 | |
| Finished cloth | 121, 332. 55 | 107, 755. 13 | |
| Raw cotton | 1, 091, 905. 00 | 1, 095, 768. 39 | |
| Coal, starch, burlap | 56, 100. 00 | 56, 100. 00 | |
| Total | 1, 692, 626. 66 | 1, 803, 674. 63 | ² $111, 047. 97 |
| **September 30, 1919.** | | | |
| Work in process | 425, 468. 49 | 634, 207. 49 | |
| Finished cloth | 101, 815. 05 | 183, 900. 79 | |
| Raw cotton | 1, 043, 035. 00 | 1, 122, 186. 95 | |
| Coal, starch, burlap | 32, 879. 00 | 32, 879. 00 | |
| Total | 1, 603, 197. 54 | 1, 973, 174. 23 | ² 369, 976. 69 |
| **September 30, 1920.** | | | |
| Work in process | 380, 787. 51 | 862, 411. 77 | |
| Finished cloth | 225, 746. 62 | 505, 801. 09 | |
| Raw cotton | 645, 875. 00 | 907, 410. 45 | |
| Coal, starch, burlap | 45, 542. 00 | 45, 552. 00 | |
| Total | 1, 297, 951. 13 | 2, 321, 174. 31 | ² 1, 023, 223. 18 |

² Increase.

As the result of his revaluation of the inventories, the Commissioner has increased or decreased the net income of the several years and period under consideration by the following amounts:

| Period. | Increase. | Decrease. |
|---|---|---|
| Calendar year 1916 | | $65, 122. 47 |
| Calendar year 1917 | $108, 836. 20 | |
| Jan. 1 to Sept. 30, 1918 | 67, 334. 24 | |
| Fiscal year 1919 | 258, 928. 72 | |
| Fiscal year 1920 | 653, 246. 49 | |

In general, the method adopted by the Commissioner for the revaluation of the inventories is as follows:

(1) Since the experience of the petitioner has been that of four complete turnovers in the mill during an annual accounting period, and since the sales of finished cloth during the last quarter of each accounting period exceeded the finished cloth on hand at the beginning of the last quarter as well as the finished cloth which could be manufactured from work in process at the beginning of the quarter, the Commissioner has assumed that the finished cloth and work in process in the inventory, at the close of each accounting period, was manufactured entirely during the last quarter and at the costs of raw cotton, labor, and overhead applicable to that quarter.

(2) Raw cotton on hand at the end of the quarter was identified by bale numbers and the cost thereof ascertained by reference to invoices.

(3) The quantity and cost of raw cotton put to process during the quarter was determined by adding to the quantity and cost of raw cotton on hand at the beginning of the quarter the quantity and

cost of raw cotton purchased, and deducting from the totals thus obtained the quantity and cost of raw cotton sold and the quantity and cost of raw cotton on hand at the close of the quarter.

(4) The gross waste was determined by adding to the work in process at the beginning of the quarter the raw cotton put to process during the quarter, and deducting from the total so obtained work in process at the end of the quarter and total weight of finished cloth manufactured during the quarter. Percentage of gross waste was determined by dividing the gross waste by the quantity of cotton consumed during the quarter.

(5) The cost of raw cotton put to process, ascertained as in (3) above, was credited with the amount of the proceeds realized from the sale of waste during the quarter, the remainder representing the net cost of cotton put to process.

(6) Work in process at the beginning and end of the quarter was deemed to be 50 per cent completed.

(7) Wastage was assumed to take place ratably over the processes of manufacture; hence, in the case of work in process, one-half of the waste was assumed to have taken place.

(8) The cost of direct labor and overhead, per pound of finished cloth, was determined by dividing the total expenditures, during the quarter, for these items, respectively, by the quantity of finished cloth manufactured during the quarter.

(9) Work in process was reduced to its equivalent in pounds of finished cloth, and the cost of direct labor and overhead contained therein was determined by multiplying said equivalent by one-half the rates computed as in (8) above.

(10) Work in process was raised to its equivalent in raw cotton, and the cost of raw cotton contained therein was determined by multiplying said equivalent by the net cost of raw cotton computed as in (5) above.

The following compilation, taken from the revenue agent's report, illustrates the application of this method and the manner in which the Commissioner determined the value of the inventory at December 31, 1916:

*Cotton cost.*

|  | Weight. | | Value. |
|---|---|---|---|
| (1) Cotton on hand September 30, 1916 | 3, 912, 056 | lbs. | $660, 506. 90 |
| (2) Cotton purchased during quarter | 3, 836, 285 | " | 913, 802. 03 |
| Total | 7, 748, 341 | " | $1, 574, 308. 93 |
| Less cotton sold during quarter | 679, 436 | " | 180, 263. 82 |
| Difference | 7, 068, 905 | " | $1, 394, 045. 11 |
| (3) Less cotton on hand December 31, 1916 | 5, 181, 692 | " | 1, 056, 983. 35 |
| Put to process | 1, 887, 213 | " | $337, 061. 76 |

(4) Cotton cost: $337,061.76 divided by 1,887,213 equals $0.179.

*Waste calculation.*

(1) Stock in process September 30, 1916_____   807, 034 lbs.
(2) Cotton put to process_____ 1, 887, 213  "

(3) Total _____ 2, 694, 247  "
(4) Less stock in process December 31, 1916_____   762, 653  "

(5) Total cotton consumed_____ 1, 931, 594  "
(6) Less cloth manufactured_____ 1, 168, 074  "

(7) Gross waste_____   763, 520  "

Percentage of waste: 763,520 lbs. (Gross waste) divided by 1,931,594 lbs. (Total cotton consumed) equals 39.5%.

*Net cotton cost.*

Proceeds of sale of waste during quarter_____ $88, 669. 49
Cotton put to process_____ 1, 887, 213 lbs.

$88,669.49 divided by 1,887,213 equals $0.047 (Credit per pound).

$0.179 (Cotton cost) minus $0.047 (Credit per pound) equals $0.132 (Net cost of cotton per pound).

*Direct labor.*

Total direct labor cost for quarter_____ $286, 150. 87
Cloth manufactured during quarter_____ 1, 168, 074 lbs.

$286,150.87 divided by 1,168,074 equals $0.2448 (Cost of direct labor per pound of finished cloth).

*Overhead.*

Total overhead cost for quarter_____ $160, 670. 71
Cloth manufactured during quarter_____ 1, 168, 074 lbs.

$160,670.71 divided by 1,168,074 equals $0.1375 (Cost of overhead per pound of finished cloth).

*Cost of work in process.*

762,653 lbs. divided by 80.25% (100%—½ of 39.5% waste) equals raw cotton equivalent of_____   950, 346 lbs.
762,653 lbs. divided by 80.25% equals 950,346 lbs. raw cotton, which divided by 60.5% (100%—39.5% waste) equals finished cloth equivalent of_____   574, 959 lbs.
Cost of raw cotton (950,346 lbs. at $0.132 per pound)_____ $125, 445. 67
Cost of direct labor (574,959 lbs. at ½ of $0.2448)_____   70, 374. 98
Cost of overhead (574,959 lbs. at ½ of $0.1375)_____   39, 528. 43

Inventory value of work in process at cost_____ $235, 349. 08

*Cost of finished cloth.*

90,511 lbs. divided by 60.5% (100%—39.5% waste) equals raw cotton equivalent of_____   149, 605 lbs.
Cost of raw cotton (149,605 lbs. at $0.132 per pound)_____ $19, 747. 86
Cost of direct labor (90,511 lbs. at $0.2448 per pound)_____   22, 157. 09
Cost of overhead (90,511 lbs. at $0.1375 per pound)_____   12, 445. 26

Inventory value of finished cloth at cost_____   54, 350. 21

*Summary of inventory.*

| | |
|---|---|
| Work in process | $246,418.30 |
| Finished cloth | 54,350.21 |
| Raw cotton | 1,056,983.35 |
| Coal, starch and burlap | 10,603.00 |

| | |
|---|---|
| Commissioner's amended inventory at December 31, 1916 | $1,368,354.86 |

In the revaluation of the inventories for the years and period under consideration, the Commissioner relied upon all the cost data available from the petitioner's books of account, and the method above illustrated is predicated upon the data available. Petitioner made no inventory of waste on hand at the beginning and end of each quarter; hence, the Commissioner found it necessary to base the credit to initial cotton cost, for wastage, upon the sales of waste made during the quarter. There was not a segregation, on the petitioner's books of account, of the costs applicable to the several operations involved in the petitioner's process of converting raw cotton to finished grey cloth. Other data necessary for a valuation of the inventories in accordance with the correct principles of cost accounting was not available from the books of account.

Over the period December 31, 1916, to September 30, 1920, finished cloth produced in each quarter, and finished cloth and work in process on hand at the end of each quarter, are shown by the petitioner's books to have been as follows:

| Quarter ending— | Cloth produced. | Cloth on hand. | Work in process on hand. |
|---|---|---|---|
| Dec. 31, 1916 | 1,168,074 | 90,511 | 762,653 |
| Mar. 31, 1917 | 1,133,619 | 117,250 | 755,218 |
| June 30, 1917 | 1,113,751 | 220,850 | 695,921 |
| Sept. 30, 1917 | 1,057,196 | 99,482 | 712,765 |
| Dec. 31, 1917 | 1,081,882 | 102,264 | 763,569 |
| Mar. 31, 1918 | 774,384 | 157,250 | 850,108 |
| June 30, 1918 | 1,101,711 | 109,915 | 844,816 |
| Sept. 30, 1918 | 1,092,509 | 117,105 | 845,876 |
| Dec. 31, 1918 | 1,006,499 | 133,295 | 775,263 |
| Mar. 31, 1919 | 762,380 | 214,000 | 841,647 |
| June 30, 1919 | 959,039 | 372,005 | 925,917 |
| Sept. 30, 1919 | 949,985 | 157,230 | 835,976 |
| Dec. 31, 1919 | 989,299 | 122,195 | 810,951 |
| Mar. 31, 1920 | 1,011,445 | 105,250 | 855,273 |
| June 30, 1920 | 960,278 | 100,325 | 867,869 |
| Sept. 30, 1920 | 922,603 | 239,676 | 779,031 |

For the calendar year 1917, and the fiscal years 1918, 1919, and 1920, respectively, sales of waste are shown by the petitioner's books to have been as follows:

| | |
|---|---|
| Calendar year 1917 | $277,307.02 |
| Fiscal year 1918 | 148,295.42 |
| Fiscal year 1919 | 244,363.95 |
| Fiscal year 1920 | 335,300.30 |

For the same years the cost of raw materals, labor, overhead, and all other expenses are shown by the petitioner's books to have been as follows:

| | Calendar year 1917. | Fiscal year 1918. | Fiscal year 1919. | Fiscal year 1920. |
|---|---|---|---|---|
| Inventory opening | $1, 433, 477. 33 | $839, 715. 43 | $1, 692, 626. 66 | $1, 603, 197. 54 |
| Cotton purchased | 2, 002, 726. 22 | 2, 429, 290. 23 | 1, 800, 335. 08 | 2, 441, 379. 66 |
| Total | 3, 436, 203. 55 | 3, 269, 005. 66 | 3, 492, 961. 74 | 4, 044, 577. 20 |
| Inventory closing | 2, 161, 138. 16 | 1, 692, 626. 66 | 1, 603, 197. 54 | 1, 297, 951..13 |
| Cost of goods sold | 1, 275, 065. 39 | 1, 576, 379. 00 | 1, 889, 764. 20 | 2, 746, 626. 07 |
| Taxes | 85, 091. 61 | 161, 991. 03 | 278, 059. 33 | 691, 748. 90 |
| Insurance | 31, 343. 62 | 33, 920. 48 | 16, 295. 51 | 23, 018. 82 |
| Freight & Cartage | 3, 168. 98 | 4, 730. 49 | 5, 369. 24 | 9, 043. 08 |
| Commission | 34, 137. 12 | 36, 393. 00 | 44, 494. 76 | 74, 898. 44 |
| Oil | 4, 854. 26 | 6, 197. 48 | 8, 168. 06 | 8, 314. 35 |
| Labor | 1, 399, 479. 72 | 1, 502, 446. 53 | 1, 684, 772. 75 | 2, 346, 240. 19 |
| Warp | 4, 373. 92 | 512. 37 | 1, 517. 74 | 3, 364. 31 |
| Fuel and Light | 134, 597. 96 | 191, 406. 60 | 120, 618. 12 | 214, 720. 74 |
| General expense | 17, 958. 60 | 15, 958. 23 | 19, 346. 40 | 19, 022. 39 |
| Interest | 23, 807. 22 | 4, 613. 57 | | |
| Supplies | 87, 677. 69 | 110, 622. 88 | 116, 798. 85 | 122, 383. 95 |
| Repairs | 85, 949. 19 | 83, 318. 79 | 249, 243. 25 | 342, 890. 32 |
| Depreciation | 8, 795. 00 | 43, 098. 00 | | |
| Bad Debts | | 140. 12 | 1, 499. 80 | 21, 548. 29 |
| Loss on Bonds | 5, 888. 80 | | | 77, 156. 00 |
| Total expenses | 3, 202, 188. 98 | 3, 771, 728. 57 | 4, 435, 948. 01 | 6, 700, 975. 85 |

The annual accounting period of the petitioner is a fiscal year ending September 30. The return for the taxable year 1917 was filed on the basis of a calendar year. A return was filed for the short period January 1 to September 30, 1918. The returns for all subsequent years have been filed on the basis of a fiscal year corresponding with the petitioner's annual accounting period. The revenue agent, who examined the petitioner's books and verified its returns for the years and period under consideration, determined the net income for the full fiscal year ended September 30, 1918, to be $798,948.28, and the net income of the period January 1 to September 30, 1918, to be nine-twelfths of $798,948.28, or $599,211.21. The net income for the period January 1 to September 30, 1918, as shown by the Commissioner in the deficiency letter, was computed as follows:

Net income as shown by revenue agent's report _____ $599, 211. 21
Add: Increase in inventory of September 30, 1918,
        as adjusted by Commissioner _____ $111, 047. 97
   Less: Increase in inventory of December 31,
    1917, as adjusted by Commissioner _____ 43, 713. 73
                                        67, 334. 24

      Net income shown in deficiency letter _____ 666, 545. 45

The net income for the full fiscal year ended September 30, 1918, as determined by the Commissioner, is $867,155.36, computed as follows:

Net income as shown by revenue agent's report_____ $798,948.28
Add: Increase in inventory of September 30, 1918, as
      adjusted by Commissioner_____ $111,047.97
    Less: Increase in inventory of September 30,
    1917, as adjusted by Commissioner_____ 42,840.89
                                                             68,207.08

Net income as adjusted by Commissioner_____ 867,155.36

The Commissioner, in his amended answer, asserts that the *actual* net income for the period January 1 to September 30, 1918, is $718,-881.22, and that the deficiency, for the period stated, should be determined on the basis of such net income rather than a net income of $666,545.45 as shown in the deficiency letter. Further, the Commissioner, in his amended answer, asserts additional deficiencies as follows:

Calendar year 1917 (overassessment) _____ *$1,734.30*
Period January 1 to September 30, 1918_____ 44,369.60
Fiscal year 1919_____ 4,210.04
Fiscal year 1920_____ 4,891.42

    Total_____ 51,736.76
Add: Overassessment for 1916 credited against deficiency in deficiency letter, but barred by statute of limitations_____ 1,302.45

    Total additional deficiency_____ 53,039.21

The additional deficiency for the period January 1 to September 30, 1918, is occasioned by an increase of $52,335.77 and a decrease of $23,578.15 in the net income and invested capital, respectively, as shown in the deficiency letter. The additional deficiency for the fiscal year 1919 is occasioned by a decrease of $75,870.59 in the invested capital as shown by the deficiency letter. The additional deficiency for the fiscal year 1920 is occasioned by an increase of $1,856.52 and a decrease of $80,107.40 in the net income and invested capital, respectively, as shown in the deficiency letter.

OPINION.

GREEN: We have here the anomalous situation of the petitioner attacking the validity of the very thing which it relies upon in support of its allegation of error. The fourth assignment of error, and the first to be here considered, is that the Commissioner has overstated the net income for each of the years and period under consideration; and the facts set out in subdivision 4 of paragraph 5 of the petition, upon which the petitioner relies to support the assignment of error, are as follows:

    In accordance with both the results and method employed by the Commissioner in redetermining the value of the inventories pertinent to the tax periods set forth in paragraph 3 of this petition, he should have determined the cost of the cotton cloth sold as follows:

[Here follows a computation of the cost of goods sold, for each of the years and period under consideration, according to the method used by the Commissioner in the revaluation of the inventories.]

In other words, the petitioner does not dispute the correctness of the inventory values determined upon by the Commissioner, but raises the issue that the Commissioner should have determined the cost of goods sold, not upon the basis of inventories, but by resort to the unit cost of production determined in the same manner as the Commissioner has determined the unit cost of finished goods in the closing inventory. Yet, during the hearing of the appeal, counsel for petitioner devoted nearly his entire time to an effort to prove that the method used by the Commissioner for the revaluation of inventories was theoretically wrong from the standpoint of sound principles of cost accounting. His entire brief, filed after the oral hearing, is devoted to an earnest attack, not only upon the method, but also upon the inventory values reached by the Commissioner through the use of that method. Furthermore, at no time in this proceeding has the petitioner contended that the method used by the Commissioner for the determination of the cost of goods sold is incorrect or not in accordance with sound accounting principles; nor has it contended that the results obtained by the Commissioner through the use of that method are incorrect, except for such inference as may be drawn from the contention contained in the brief, filed after the hearing, that the inventories used by the Commissioner for the determination of the cost of goods sold are incorrect because of the method employed by the Commissioner in ascertaining their cost values. Taking the record as a whole, for it could never be discovered from the pleadings alone, the petitioner's position appears to be that the method employed by the Commissioner for the revaluation of inventories is wrong and that the results obtained from the use of such method are incorrect; but, in any event, the same method should be used for the purpose of ascertaining the cost of goods sold for each of the years and period under consideration.

A greater responsibility rests upon the petitioner than the mere proving that the methods used by the Commissioner are wrong. We can not assume, though the petitioner succeed in proving the fallacy of the Commissioner's methods, that the results obtained thereby are necessarily incorrect. That is something which, if true, the petitioner must establish by competent evidence. We are not so much concerned with the methods employed as we are with the results obtained through the use of the methods. Not a shred of evidence was offered by the petitioner to show that the cost of goods sold, for the years and period under consideration, was something other than that determined by the Commissioner. In fact, we have

not been advised what the Commissioner's determination was in that respect. As for the inventory values determined by the Commissioner, on the basis of cost, though it would be sufficient to state that no issue was raised in the pleadings in respect of them, the petitioner has not established that they are incorrect, notwithstanding that there may be faults in the method employed by the Commissioner in their revaluation. On the record confronting us, we must hold that the petitioner has failed to prove the allegation of error that the Commissioner has overstated the net income for each of the years and period under consideration.

In the fifth assignment of error the petitioner alleges that the Commissioner should have determined the profits-tax liability for the fiscal year 1920 in accordance with the provisions of section 328 of the Revenue Act of 1918. No facts are set out in the petition in support of this assignment of error; nor has the petitioner offered any evidence whatever to show that it falls within any of the provisions of section 327 of the Revenue Act of 1918 which would entitle it to have its profits taxes determined under the provisions of the relief section. The issue must be decided adversely to the petitioner.

The Commissioner's amended answer, in which he asserts an additional deficiency of $53,039.21, raises the issue as to the amount of the net income for the short period January 1 to September 30, 1918. The petitioner had established an annual accounting period ending September 30. Its return for the taxable year 1917 was filed on a calendar year basis; but under the provisions of section 212(b) it was required to compute its net income for the taxable year 1918 upon the basis of its annual accounting period, which was the fiscal year ending September 30. Therefore, the petitioner filed a return for the short period January 1 to September 30, 1918. The Commissioner determined the net income of the short period as being nine-twelfths of the net income of the full fiscal year ended September 30, 1918, plus the increase occasioned by adjustments of the inventories of December 31, 1917, and September 30, 1918, respectively, or $666,545.45, which is the net income shown in the deficiency letter. An inventory of merchandise and supplies was taken by the petitioner and its books closed as of December 31, 1917; therefore, the actual net income of the short period January 1 to September 30, 1918, was susceptible of determination. The Commissioner has determined that net income to be $718,881.22, and, in his amended answer, asks the Board to determine the deficiency for the period January 1 to September 30, 1918, upon the basis of a net income in the amount last stated. More definitely, the issue is whether the net income of the nine-month period January 1 to

September 30, 1918, is nine-twelfths of the net income of the full fiscal year ended September 30, 1918, or the net income actually earned during the nine-month period.

In *Appeal of Henry D. Weed*, 2 B. T. A. 84, we held that an individual who kept his books of account upon the basis of a fiscal year, but made his income-tax returns for 1917 and prior years on the basis of a calendar year, was required to file an income-tax return for the short period from the beginning of the calendar year in which the fiscal year ended to the end of the fiscal year, and that his tax liability upon such return should be computed in the manner outlined in section 226 of the Revenue Act of 1918. Our decision in that case is equally applicable to the facts in this. The petitioner should have filed a return for the nine-month period January 1 to September 30, 1918, showing a net income which, under the provisions of section 226 " shall be computed on the basis of such period for which separate return is made." Since an inventory of merchandise and supplies was taken by the petitioner and its books of account were closed as of December 31, 1917, it is obvious that the net income of the nine-month period January 1 to September 30, 1918, is susceptible of ascertainment without resort to any method of prorating the income of the twelve-month period ended September 30, 1918. Such being the case, the net income of the period in question should be redetermined solely upon the basis of the results of the business operations of that period, independently of all others, and in accordance with the method of accounting employed in keeping the books of account. Whether the computation of the net income and the tax liability for the period January 1 to September 30, 1918, in accordance with this opinion, will serve to increase or decrease the deficiency found by the Commissioner, we must leave for a Rule 50 determination. The Commissioner in his computation of the value of inventories followed a cost accounting method. Such a method may produce a correct valuation of the inventories. However, if the amount of the increase in the value of inventories thus obtained is added to the petitioner's net income, other adjustments of gross income must be made in order to clearly reflect the petitioner's net income. If this has not been done, it may be done by the parties in their recomputation hereunder.

Except for the increase, if any, in the deficiency which may result from a recomputation of the tax liability for the period January 1 to September 30, 1918, in accordance with the method above outlined, the additional deficiency asserted by the Commissioner, in his amended answer, must be disallowed, since the Commissioner has failed to show by proper proof the existence of a greater deficiency than that shown in the deficiency letter, and obviously the burden of proof thereof is upon him. The only evidence offered by the

Commissioner, in support of the additional deficiency, was the testimony of an auditor of the Bureau of Internal Revenue to the effect that the recomputations of the tax liability, for each of the years and period involved, shown in an amended statement furnished to the petitioner, and admitted in evidence as one of petitioner's exhibits, are correct and the deficiencies shown therein are the correct deficiencies. Examination of this statement reveals several adjustments in the net income and invested capital of the several years and period under consideration, none of which were explained to this Board, or justified by affirmative proof.

The second assignment of error set out in the petition is that the consolidated excess-profits tax for the year 1917 was not apportioned by the Commissioner between the petitioner and its subsidiary, the Silver Creek Co. During the hearing the parties reached an agreement that the tax may be apportioned between the two companies on the basis that the net income of each bears to the consolidated net income.

*Judgment will be entered after 20 days' notice, under Rule 50.*